UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

    MARVIN L. POWELL,                                     Case No. 12-21322-dob
                                                                  Chapter 7 Proceeding
                Debtor.                                           Hon. Daniel S. Opperman
_____/

MARVIN L. POWELL,

    Plaintiff,

v.                                                                            Adv. Pro. No. 12-02122-dob

FRANKENMUTH CREDIT UNION,

    Defendant.

_____/

## TRIAL OPINION

On June 26, 2012, Marvin L. Powell ("Plaintiff") filed a Complaint against Frankenmuth Credit Union ("FCU") seeking recovery of an alleged preferential transfer pursuant to 11 U.S.C. § 547(b). In their Joint Final Pretrial Order, the parties indicated that there were no issues of fact to be litigated and they agreed to submit briefs in support of their respective legal positions in lieu of a trial. The Court entered an Order Establishing Briefing Deadlines on November 27, 2012, and on stipulation of the parties, entered an Order Extending Briefing Deadlines on January 14, 2013. The parties timely submitted their briefs.

After reviewing the parties' briefs, the Court concluded that there were questions of fact relating to how the unemployment benefit funds were deposited in Plaintiff's savings account at FCU and FCU's involvement, if any, in the State of Michigan depositing the benefit funds into

1

that account. The Court set a limited evidentiary hearing on those fact issues for July 19, 2013, received a written stipulation of facts, heard testimony from Gretchen Jungnitsch, and admitted Exhibits 1 - 2 and A – B.

## I. BACKGROUND FACTS

### A. Undisputed Facts

The undisputed facts are as follows:

1. On November 24, 2006, Plaintiff and his then spouse, Sara Powell, applied for and were granted membership with FCU. They completed a Member Account Application and entered into an Open End Credit Plan. Plaintiff and Sara Powell had a joint checking and savings account at FCU.

2. On July 30, 2007, Plaintiff and Sara Powell obtained a Visa credit card and a home improvement loan from FCU.

3. Plaintiff failed to make his monthly credit card payments, and, on October 22, 2009, FCU filed a lawsuit against Plaintiff in the 70th District Court for the County of Saginaw, Michigan (Case No. 09-5258-CV-2).

4. On December 18, 2009, FCU obtained a Judgment against Plaintiff for the unpaid credit card balance in the amount of $9,466.72.

5. Plaintiff failed to make his monthly loan payments, and, on December 18, 2009, FCU filed a lawsuit against Plaintiff in the 70th District Court for the County of Saginaw, Michigan (Case No. 09-6120-GC-2).

6. On March 12, 2010, FCU obtained a Judgment against Plaintiff for the unpaid balance owed on the home improvement loan in the amount of $13,008.88.

7. As of February 1, 2012, the balance owed by Plaintiff to FCU on the unpaid Judgments totaled approximately $17,212.00.

8. On February 1, 2012, the sum of $1,448.00, representing Plaintiff's unemployment benefits, was deposited by the State of Michigan into Plaintiff's joint savings account at FCU.

9. On February 1, 2012, FCU withdrew the unemployment benefit funds from Plaintiff's joint savings account and applied the proceeds against the Judgment balance owed by Plaintiff to FCU.

10. Plaintiff filed his Chapter 7 bankruptcy petition on April 20, 2012.

11. The setoff took place within 90 days of Plaintiff's filing his bankruptcy petition.

B. Disputed Facts

In their briefs, the parties allege differing facts regarding how the benefit funds ended up in Plaintiff's savings account at FCU and FCU's involvement, if any, in the State of Michigan depositing the benefit funds into that account.

In Plaintiff's Brief in Support of its Adversarial Complaint and his Reply Brief, Plaintiff alleges that (1) during January 2012, Plaintiff was to receive unemployment benefits from the State of Michigan; (2) in prior years, Plaintiff received unemployment benefits from the State of Michigan and had those benefit funds directly deposited into a joint checking account he had at FCU; (3) when Plaintiff was laid off during the fourth quarter of 2011, he applied for unemployment benefits and requested that the benefit funds no longer be deposited into his joint checking account at FCU; (4) Plaintiff instead directed the State of Michigan to deposit the benefit funds into his checking account at ELGA Credit Union; (5) at some point, FCU received a notice from the State of Michigan indicating that it was attempting to deposit Plaintiff's benefit funds into his account at FCU, but it could not do so since it did not have the necessary account information; (6) thereafter, FCU gave the State of Michigan the necessary account information to allow the benefit funds to be deposited into a savings account Plaintiff held at FCU; and (7) after the deposit was made, FCU immediately removed those benefit funds from Plaintiff's savings account and applied the monies toward the balance owed to it on two prior money judgments it had against Plaintiff.

In FCU's Trial Brief and its Reply Brief, FCU alleges that (1) Plaintiff directed the State of Michigan to deposit his unemployment benefit funds into his account at FCU, and he provided

the State of Michigan with the name of the credit union, the routing number, and his joint account number; (2) Plaintiff failed to provide the specific suffix necessary to allow the State of Michigan to deposit the benefit funds; (3) at the time the deposit, only a savings account was open under the account number provided by the Plaintiff to the State of Michigan, and the benefit funds were deposited into that savings account; and (4) contrary to Plaintiff's assertions, FCU did not direct the benefit funds to be deposited into the savings account.

### C. July 19, 2013, Evidentiary Hearing

Ms. Jungnitsch, the accounting manager of FCU, testified that she handled the deposit received by FCU. This deposit came to her attention because of a daily exception report she received on February 1, 2012, which contained the member number of Mr. Powell, but not a suffix number. In this situation, the NACHA Operating Rules and Regulations ("NACHA") apply. The pertinent parts of the NACHA are:

> SECTION 3.1 General Rights and Responsibilities of RDFIs
>
> SUBSECTION 3.1.1 RDFI Must Accept Entries
>
> An RDFI must accept Entries that comply with these Rules and are received with respect to an account maintained with that RDFI, subject to its right to return Entries under these Rules. An Entry is deemed to be received by an RDFI on the Banking Day on which the Entry is made available by the Receiving ACH Operator to the RDFI or to the RDFI's Receiving Point.
>
> SUBSECTION 3.1.2 RDFI May Rely Solely on Account Numbers for Posting of Entries
>
> An RDFI may rely solely on the account number contained in an Entry for the purpose of posting the Entry to a Receiver's account, regardless of whether the name of the Receiver in the Entry matches the name associated with the account number in the Entry.

Per NACHA, she looked up the account, noted that only one suffix number existed, and then deposited the $1,448.00 into the savings account. She knew the funds in question were

unemployment benefits, but she did not contact anyone from the State of Michigan regarding the deposit. After the deposit, she contacted the FCU Collection Department, which then offset the funds.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid, or recover preferences) and (K) (determinations of the validity, extent, or priority of liens).

The issues before the Court arise from Title 11 of the United States Code and are therefore within this Court's jurisdiction pursuant to *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## III. APPLICABLE LAW

Section 547(b) states that:

the trustee may avoid any transfer of an interest of the debtor in property–

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
> > (A) the case were a case under chapter 7 of this title;
> > (B) the transfer had not been made; and
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The Plaintiff bears the burden of proof as to each element of Section 547(b), and the "creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c)" of Section 547." 11 U.S.C. § 547(g).

## IV. DISCUSSION

### A.  The Right of Setoff

Section 553 of the Bankruptcy Code preserves the right to set off as a widely recognized common law right that "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286 (1995). Section 553 provides, in part:

> Except as otherwise provided in this section and in sections 362 and 362 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of this case, except to the extent that –
>
> \*     \*     \*
>
> (3) the debt owed to the debtor by such creditor was incurred  by such creditor –
>   (A) after 90 days before the date of the filing of the petition;
>   (B) while the debtor was insolvent;
>   (C) for the purpose of obtaining a right of setoff against the debtor
>   . . . .

"State law governs the substance of a set off claim under § 553." *In re New Haven Foundry, Inc.*, 285 B.R. 646, 648 (Bankr. E.D. Mich. 2002) (citation omitted). The right to set off is preserved where (1) there are mutual, pre-petition obligations owing between the debtor and the creditor and (2) a right to setoff the obligations exists under non-bankruptcy law. *In re Holder*, 182 B.R. 770, 775 (Bankr. M.D. Tenn. 1995). In this case, if FCU had the right of setoff, no

preference exists. If not, then a preference exists and Plaintiff is entitled to the return of the preference.

B.  FCU's Interest in the Joint Account/Benefit Funds

FCU asserts that it has both a security interest granted by agreement and a statutory lien in the Plaintiff's joint account, both of which it claims entitle it to offset the funds Plaintiff held on deposit at FCU.

FCU first argues that Plaintiff agreed to grant FCU a consensual/contractual security interest in all shares and/or deposits in any of his accounts with FCU. On November 24, 2006, Plaintiff signed a Membership and Account Application and Open End Credit Plan, establishing his joint membership account with FCU. Those documents contain language granting a security interest in Plaintiff's account share and deposit accounts for any and all loans issued to him. On July 30, 2007, Plaintiff obtained a loan from and opened a credit card account with FCU pursuant to that Open End Credit Plan. The Open End Credit Plan documentation specifically provides: "The credit union will take a security interest in all your shares and deposits in the credit union, including future additions, as security for advances under this plan." On a separate page, the Open End Credit Plan documentation provides:

> Contractual Pledge of Shares:  I pledge all my shares and deposits in the credit union, including future additions, as security for advanced under this Open-end Credit Plan.  In case I default, you may apply these shares and deposits to the payment of all sums due at the time of default, including costs of collection and reasonable attorney's fees.  No lien or right to impress a lien on shares and deposits shall apply to any of my shares which may be held in an "Individual Retirement Account" or "Keogh Plan."

Per this language, FCU asserts a consensual security interest in Plaintiff's joint account at FCU.

FCU also argues that it has a statutory lien in the Plaintiff's joint account and the benefit funds pursuant to Mich. Comp. Laws § 490.361(4). Mich. Comp. Laws § 490.361(4), provides:

> Except as provided in this subsection or where prohibited by applicable state or federal law or otherwise agreed by contract, a domestic credit union has a lien on any share of a member, or any deposit account from which a member may withdraw for his or her own benefit without the consent of another person, for any obligation owed to the domestic credit union by that member or for any loan cosigned or guaranteed by that member. A domestic credit union does not have a lien on any individual retirement account or other account permitting tax deferrals or providing other tax benefits under state or federal law. A domestic credit union may refuse to allow a withdrawal from any account on which it has a lien if the member is delinquent in any outstanding obligation to the domestic credit union at the time of the withdrawal.

Thus by its express terms, Mich. Comp. Laws § 490.361(4) provides a credit union with a lien under two scenarios, both of which apply when a member is indebted to the credit union. In these situations, Mich. Comp. Laws § 490.361(4) provides a credit union with a lien (a) "on any share of a member" or (b) "any deposit account from which a member may withdraw for his or her own benefit without consent of the another person."

### C. Limitations on Interest of FCU

Mich. Comp. Laws § 421.30 provides:

> All rights to benefits shall be absolutely inalienable by any assignment, sale, garnishment, execution or otherwise, and, in case of bankruptcy, the benefits shall not pass to or through any trustees or other persons acting on behalf of creditors: Provided, That this section shall not prohibit the use of any remedy provided by law insofar as the collection of obligations incurred for necessaries furnished to the recipient of such benefits or his dependents during the time when such individual was unemployed is concerned.

The statutory lien created by Mich. Comp. Laws § 490.361(4) is limited by the phrase "where prohibited by applicable state or federal law." Here, it is undisputed that the $1,448.00 came from the State of Michigan and were unemployment benefits. Mich. Comp. Laws §

421.30 prohibits the assignment, sale, garnishment, execution, or other similar transfers of these rights. This statute specifically states the benefits in issue here are "absolutely inalienable."

The July 19, 2013, testimony made it clear that no other monies were in Plaintiff's savings account and FCU knew the State of Michigan deposit was for unemployment benefits. The Court finds there was no comingling of funds so as to alter the inalienable status of the unemployment benefits and that FCU knew of the nature of these benefits.

FCU did not have a statutory lien on these funds and could not enjoy an assignment or pledge of these funds either. FCU did not have any right to these benefits and, accordingly, FCU could not setoff monies in this account.

Plaintiff, therefore, is entitled to the return of these monies as a preference under 11 U.S.C. § 547.

D. <u>Applicability of 11 U.S.C. § 553(a)(3) & Unclean Hands Doctrine</u>

The Court initially scheduled the July 19, 2013, evidentiary hearing because fact issues existed regarding FCU's knowledge of the unemployment benefits and the actions taken by FCU to receive these monies. While the Court has concluded that Plaintiff will prevail for other reasons, some analysis of the unclean hands doctrine is warranted.

Plaintiff argues that the set off was invalid because the benefit funds were not voluntarily deposited by Plaintiff into the savings account and FCU's actions were not in the ordinary course of its business or its dealings with Plaintiff. Plaintiff alternatively argues that the set off should be voided on the basis that FCU has unclean hands. Specifically, Plaintiff argues that it was FCU who directed the State of Michigan to deposit the unemployment benefit funds into Plaintiff's joint account at FCU and that those actions evidence FCU's unclean hands.

In this case, the testimony is clear that FCU did nothing to warrant a finding of unclean hands. Defendant did not contact the State of Michigan, so there is no evidence to suggest FCU caused funds to come to it and not another place. There is also no evidence that FCU improperly added any information in order to deposit the money. NACHA 3.1.1 states that FCU must accept the funds. Ms. Jungnitsch properly supplied the only available suffix to allow the deposit to be made. Further, she followed the normal procedure to notify others that money was deposited. With this record, there is no evidence of nefarious conduct warranting a finding of unclean hands.

V. Conclusion

The Court concludes that, because Defendant could not have rights in the funds as described in Mich. Comp. Laws § 421.30, Defendant did not have any rights to effect a setoff. Although Plaintiff's unclean hands doctrine does not apply with these facts, Plaintiff is entitled to recover $1,448.00 plus interest and court costs as a preference.

Counsel for Plaintiff is directed to prepare an Order consistent with this Opinion and the presentment of order rules of this Court.

Not for Publication.

**Signed on August 06, 2013**

                                                 **/s/ Daniel S. Opperman**
                                                 **Daniel S. Opperman**
                                                 **United States Bankruptcy Judge**